UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No:  CR-10-00039  SBA |
| Plaintiff, | |
| | **ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |
| vs. | |
| TOMMY ANDRE GATES, JR., | [Docket 23] |
| Defendant. | |

The parties are presently before the Court on Defendant's Motion to Suppress Evidence. (Docket 23.)  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS Defendant's motion for the reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.

I.  **BACKGROUND**

　　A.  **FACTUAL SUMMARY**

Defendant is charged in a three-count indictment with violations of the following: (1) 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) – Possession with intent to distribute approximately 1.36 kilograms of marijuana; (2) 18 U.S.C. § 924(c) – Possession of a loaded firearm in furtherance of the same offense; and (3) 18 U.S.C. § 922(g)(1) – A felon in possession of a firearm and ammunition.  The indictment arises from a warrantless probation search performed by Oakland police officers of a 98th Avenue home in Oakland on December 23, 2009.  The search uncovered: (1) a 9 mm Tec-9 assault pistol with all markings and serial number obliterated; (2) twenty-one rounds of ammunition in a high-capacity magazine; (3) forty-one 1" x 1" plastic baggies containing marijuana; (4) on fold top plastic baggie containing marijuana; (5) three gallon size press lock bags containing marijuana; (6) two sandwich size press lock bags

1   containing marijuana; (7) numerous empty 1" x 1" press lock baggies; (8) a digital scale; (9)

2   $1,009 in cash; (10) numerous items of indicia with Defendant's name, as well as several color

3   photographs depicting Defendant around the residence searched; and (11) a Mossberg, Model

4   590, 12 gauge shotgun loaded with five live rounds of ammunition.  (Bunn Decl., ¶ 10.)  The

5   Defendant was advised of his rights, waived them, said that the marijuana and guns were his,

6   and that he stayed "most of the time" at the residence.  (Id., ¶ 11.)

7        The parties dispute the events of December 23, 2009.  Each side has submitted

8   competing declarations to support their version of the facts.

9                    1.       **Government's Version**

10       In mid-to-late October 2009, an Oakland Police Department ("OPD") officer received

11  information from a confidential informant ("CI").  (Bunn Decl., ¶ 2.)  The CI told Officer Bunn

12  that an individual, sometimes known a "T-Della Reese," was in possession of firearms and

13  several pounds of marijuana, which he was selling from his home on a short block of 98th

14  Avenue just north of the 80 freeway.  (Id.)  The CI also conveyed two phone numbers for T-

15  Della Reese from memory, that T-Della Reese lives with his girlfriend in a blue-ish/purple

16  house surrounded by a chain-link fence, a black pit-bull dog is kept in the yard, a fully-

17  automatic assault weapon is kept in the house, and a "brown-ish" colored Cadillac is usually

18  parked in the driveway of the house.  (Id.)

19       On October 20, 2009, through the Computer Arrest and Booking System ("CABS"),

20  Officer Bunn identified one of the phone numbers provided by the CI as the number of Tommy

21  Andre Gates, Jr.'s (Defendant's) home phone number.  (Id., ¶ 3.)  (Officer Bunn does not

22  indicate in his declaration the address associated with that "home phone number.")  The CABS

23  records revealed Defendant's September 2007 arrest for Possession of Marijuana for Sale, and

24  the photographs of Defendant matched the description provided by the CI.  (Id.)  Officer Bunn

25  then located a blue house on the short block of 98th Avenue just north of the 80 freeway that

26  was surrounded by a chain-link fence, with a black and white pit-bull dog in the yard, and a

27  gold colored Cadillac parked in the driveway.  (Id., ¶ 4.)  That afternoon, Officer Bunn

28  obtained a report through the National Crime Information Center system revealing that the

1  Cadillac was registered to a Tiffany Chaprice Doyle, and the listed address was the same as the

2  blue house on 98th Avenue.  (Id.)

3       Officer Bunn's investigation also revealed that Defendant had provided three different

4  addresses to law enforcement and probation officials during the time period of May 27, 2009 to

5  October 28, 2009.  (Supp. Bunn Decl., ¶ 2.)  Specifically, on May 27, 2009, Defendant

6  identified a 92nd Avenue address, Apt. A, as his home address when he was cited for a traffic

7  violation.  (Id.)   Subsequently, on October 22, 2009, Bunn performed a search of Defendant

8  that showed his active probation address as being on Foothill Boulevard.  Bunn also conducted

9  a search of Defendant on October 28, 2009, which revealed that Defendant had registered his

10  address with probation as being on 92nd. Avenue, Apt. D.  (Id.)

11       Also, Officer Bunn's investigation found that up until July 15, 2009, Tiffany Doyle's

12  registered address was on 92nd Avenue, the same as the Defendant's registered home address

13  for his previous offenses.  (Bunn Decl., ¶ 5.)  Officer Bunn then ran the license plate number of

14  the Defendant's car listed from a previous citation and found that, as of August 24, 2009, the

15  car was salvaged and no longer operable.  (Id.)  Officer Bunn also confirmed that Defendant

16  was on probation from a California conviction and subject to a probation search clause

17  requiring that he submit to a search and seizure by any law enforcement officer at any time

18  without a warrant.  (Id., ¶ 6.)

19       Officer Bunn began surveillance of the 92nd and 98th Avenue addresses, specifically

20  driving by the 92nd Avenue address to see if there were indications that Defendant still lived

21  there, but neither Defendant, Doyle, nor the gold Cadillac were seen at that address.  (Id., ¶ 7.)

22  One evening, Officer Bunn went by the 98th Avenue address at night and determined that the

23  Cadillac had been there overnight.  (Id.)

24       On December 23, 2009, Officer Bunn conducted a briefing with the OPD to set up

25  further surveillance, and coordinated a search and arrest team to be available if needed. (Id., ¶

26  8.)  Officer Bunn began surveillance at 7:00 a.m. and, at 9:20 a.m., saw the Defendant "come

27  out of the house wearing blue pajama bottoms, a white t-shirt, and socks (no shoes), use a key

28  to unlock the front-right door of the gold Cadillac, and climb inside.  Officer Bunn observed

1    the Defendant sit in the car briefly, and then return inside the house.  The Defendant did not

2    knock in order to go back inside the house, and returned in a manner suggesting familiarity and

3    possession of both the vehicle and 98th Avenue address." (Id.)  Officer Bunn identified the

4    individual as Defendant and assembled a search team that gave a loud knock and announce and

5    entered the 98th Avenue home with guns drawn after a woman, later identified as Ashley

6    Hampton, opened the front door for the OPD officers.  (Id., ¶ 8.)  The officers then performed a

7    warrantless probation search of a 98th Avenue home and uncovered the items described above.

8                          **2.    Defendant's Version**

9          Defendant denies that he left the 98th Avenue residence on the morning of December

10   23, 2009 before the police entered.  (Gates Decl., ¶ 3.)  Defendant admits that he opened the

11   front door at around 9:30 a.m. on December 23, 2009, and let in Natalia Kay Hughes (who was

12   at the house when officers conducted the search).  (Id., ¶ 3.)

13         Moreover, Defendant points out several discrepancies between Officer Bunn's

14   declaration and the Government's discovery letter disclosing the information provided by the

15   CI:  (1) the CI gave a specific description of T-Della Reese as a black male, 5'9", 160 pounds,

16   dark complexion with short hair and in his early 30's, while Mr. Gates was, in fact, 41 years

17   old in October 2009; (2) the CI said that T-Della Reese had "a pound of marijuana" and several

18   guns, while the Officer Bunn said that T-Della Reese had "several pounds of marijuana which

19   he was selling from his home" and that he had guns in the house; (3) the CI described the house

20   as light blue and made no mention of a chain-link fence or pit-bull, while in Officer Bunn's

21   account the CI described the house as blueish/purple, having a chain-link fence and a black pit-

22   bull in the yard; (4) Officer Bunn's declaration says the CI said that the brown Cadillac usually

23   was parked in the driveway of the house, yet the Government now asserts the CI said that T-

24   Della Reese drove a brown Cadillac; and (5) the discovery letter does not mention the phone

25   numbers for T-Della Reese that, according to Officer Bunn, the informant provided to the

26   police.  (See Def.'s Reply at 3 n. 1, 2.)

27         Additionally, Officer Bunn's investigation found that up until July 15, 2009, Tiffany

28   Doyle's registered address was on 92nd Avenue, the same as the Defendant's registered home

                                      - 4 -

address for his previous offenses.  Also, Defendant points out that "Mr. Gates' address in

October 2006  and September 2007 arrest reports, like Ms. Doyle's 2004 DMV address, was

Apartment D at the 92nd Avenue address, more recent documents (starting with the June 2008

DMV record) listed Mr. Gates' address as Apartment A at the 92 Avenue address, not

apartment D."  (Supp. Hansen Decl., Ex. A at 150-52.)  Only the door to Apartment A on 92nd

Avenue is directly visible from the street; the door to Apartment D is not.  (Id., ¶ 7.)  The

Government does not dispute this point.

### B.     PROCEDURAL BACKGROUND

Defendant moves for an order suppressing all fruits of the warrantless search of the 98th

Avenue residence, including the physical evidence seized and Defendant's statements, on the

ground that the Government did not have probable cause to believe that Defendant was a

resident of the home subjected to search.  Defendant notes that his reported probation

address was a different address from the searched residence.

After the close of briefing, the Government filed a request for leave to file a "surreply"

brief.  This Court granted the Government leave to file the surreply brief, and Defendant has

filed a response to that brief.

## II.    LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures…."  U.S. Const.

amend. IV.  A warrantless search is unconstitutional unless the Government demonstrates that

it falls within certain established and well-defined exceptions to the warrant clause.  See United

States v. Brown, 563 F.3d 410, 414 (9th Cir. 2009).  The Government bears the burden of

persuading the court that a warrantless search does not violate the Fourth Amendment.  Id.

"[W]arrantless searches of probationers' residences are permissible under the Fourth

Amendment when they are authorized by a condition of probation and supported by reasonable

suspicion of criminal activity."  United States v. Mayer, 560 F.3d 948, 956 (9th Cir. 2009); see

also United States v. Knights, 534 U.S. 112, 121 (2001) ("When an officer has reasonable

suspicion that a probationer subject to a search condition is engaged in criminal activity, there

1  is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's

2  significantly diminished privacy interests is reasonable.").

3      However, law enforcement officers must have probable cause to believe that the

4  probationer is a resident of the house to be searched.  United States v. Motley, 432 F.3d 1072,

5  1080 (9th Cir. 2005).  Generally, probable cause requires that the facts known to the officers at

6  the time of the search must have been sufficient to support a belief, in "a man of reasonable

7  caution", that the probationer lived in the residence searched.  United States v. Howard, 447

8  F.3d 1257, 1262 (9th Cir. 2006).  For an informant's tip to establish probable cause a "totality

9  of the circumstances" approach was adopted, whereby the informant's veracity, reliability, and

10 basis of knowledge are highly relevant.  Illinois v. Gates, 462 U.S. 213, 230 (1983).  The

11 information to be considered in assessing probable cause is the information officers had

12 available at the moment they began entry into the residence.  Cuevas v. DeRoco, 531 F.3d 726,

13 732 (9th Cir. 2008).

14 **III.   DISCUSSION**

15     As indicated, Defendant moves to suppress the evidence obtained from the search on

16 the ground that the Government did not have probable cause to believe that Defendant was a

17 resident of the home subjected to the warrantless search.

18     In its opposition, the Government argues that the warrantless search was justified as a

19 valid probation search, and the police had probable cause to believe that the residence searched

20 was Defendant's residence.  The Government also argues that, if the Court finds that Defendant

21 was not a resident of the home, he lacks standing to challenge the search.  Each of those issues

22 is addressed below.

23     **A.    The Government's Argument Regarding Reasonable Suspicion of**

24         **Criminal Activity**

25     The Government argues that the warrantless search was constitutional because the

26 officers had "reasonable suspicion to justify their search of defendant's residence in this case."

27 (Govt.'s Opp. at 9.)   At the outset, this argument fails to address the primary issue raised by

28

1   Defendant – that the officers did not have probable cause to believe that the house searched

2   was Defendant's residence.

3        The Government is correct that a warrantless search of a probationer's residence is

4   permissible under the Fourth Amendment when the search is authorized by a condition of

5   probation and supported by reasonable suspicion of criminal activity.  Knights, 534 U.S. at

6   121-22.  In that regard, law enforcement officers must have probable cause to believe that the

7   probationer is a resident of the house to be searched.  Motley, 432 F.3d at 1080.  As explained

8   by the Ninth Circuit, "[n]othing in the law justifies the entry into a search of a third person's

9   house to search for the parolee.  The Fourth Amendment's protection against unreasonable

10  searches in a person's home is not diminished by the mere presence of a guest in the home.  In

11  other words, the parole condition indicates only the parolee's acquiescence to a warrantless

12  search of his own residence.  Absent this provision and the existence of exigent circumstances,

13  officers must obtain consent or a warrant to enter a house."  Id. at 1079 (internal citations and

14  quotations omitted).  Therefore, not only must the Government show that there was a

15  reasonable suspicion of criminal activity to justify a probation search, the Government must

16  also establish that there was probable cause to believe that the probationer was a resident of the

17  home searched.[1]

18       As to the first point, the Government argues that there was reasonable suspicion of

19  criminal activity.  It contends that the tip from the CI, which included Defendant's phone

20  number, a description of the home, Defendant's relationship status and living arrangement, and

21  information regarding possession of firearms and marijuana for sale, together with Officer

22  Bunn's observations and investigation, were sufficient to establish reasonable suspicion of

23  criminal activity.  Defendant does not dispute this point in either his motion or reply brief.

24  ─────────────
        [1] The Government asserts that the California Supreme Court has held that the California
25  probation search condition at issue here allows a probation search with or without reasonable
    suspicion.  However, the Government concedes that the Ninth Circuit has not yet addressed
26  this question.  Moreover, the Government states "this Court need not decide whether
    defendant's probation search condition vitiated the need for reasonable suspicion … because
27  the officers had reasonable suspicion to justify the search in this case."  (Govt.'s Opp. at 9.)  In
    fact, this question is moot because the Government has shown that the officers met the
28  reasonable suspicion requirement.

Indeed, the facts cited by the Government support the conclusion that reasonable suspicion of criminal activity was present in this case.

Accordingly, the Court next turns to the issue of whether the officers had probable cause to believe that Defendant was a resident of the searched home.

**B.    The Officers Must Have Probable Cause to Support a Belief That Defendant Was a Resident of the 98th Avenue Home**

The Government argues that the officers had sufficient information to establish probable cause to believe that Defendant was residing at the 98th Avenue address based on the following: (1) Defendant was observed in pajamas and socks exiting and entering the residence; (2) Defendant was observed using keys to enter the gold Cadillac parked in the driveway of the 98th Avenue address and registered to the address; (3) Tiffany Doyle, the woman Defendant had lived with at the 92nd Avenue address for several years, reported the 98th Avenue address as her residence as of July 2009; (4) Officer Bun determined that Defendant no longer appeared to be living at the 92nd Avenue address; and (5) the CI provided a tip that Defendant was residing at the described 98th Avenue address with his girlfriend, and was in possession of guns and marijuana.

Defendant attacks the sufficiency of this evidence.  Specifically, Defendant argues that neither the CI tip nor Officer Bunn's investigation and surveillance is sufficient to establish probable cause.  Defendant relies on the Ninth Circuit cases Howard, Harper, Watts, Dally, and Conway (full citations below), stating that "when compared to the evidence discussed in the relevant Ninth Circuit cases, the evidence the Government relies on in this case – non-specific information from an untested informant, a few drive-bys of Mr. Gates' reported probation address, a tenuous connection to the resident of the residence and her car that was parked in the driveway and a single observation of Mr. Gates in the apartment on the morning of the search – falls short."  (Def.'s Reply at 13.)

Each of those evidentiary attacks is addressed below.

1
2
3

**1.      The CI's Information Alone Was Not Sufficient to Establish Probable Cause to Believe Defendant Was a Resident of the 98th Avenue Home**

4      For an informant's tip to establish probable cause, the "totality of the circumstances"

5   must be considered, whereby the informant's veracity, reliability, and basis of knowledge are

6   highly relevant.  Illinois v. Gates, 462 U.S. 213, 230 (1983).  Here, Defendant argues that the

7   tip that Officer Bunn received from the CI was provided by an "untested" informant, two

8   months before the search, and that the Government has presented no evidence about the CI's

9   veracity, reliability, or basis of knowledge.  The Defendant points out that the CI did not

10  identify Defendant or his alleged girlfriend by name, he did not provide the specific address of

11  the home, and he did not provide any details about the interior of the residence on 98th

12  Avenue.  Defendant also notes that the descriptions and information provided by the CI

13  differed from the information in Officer Bunn's declaration (as explained in the factual

14  summary above).  Lastly, Defendant observes that the Government has not provided any

15  information about the CI's criminal history or motivation for providing information.

16      The Government argues that the CI's tip that Defendant was residing at the described

17  98th Avenue address with his girlfriend, and was in possession of guns and marijuana, was

18  sufficiently corroborated by Officer Bunn to establish probable cause.  The Government also

19  notes that the CI provided the Defendant's phone number from memory, provided the location

20  of Defendant's residence, a description of the home, including color, and the existence of a dog

21  at the residence.[2]

22      Here, the undisputed facts show that the CI does not meet the standard required by

23  Gates to establish probable cause.  First, the informant's basis of knowledge was never

24  provided, and the information given about the 98th Avenue home (color, fencing, presence of

25

26      [2] The Government also states, in a footnote, that should the Court desire more
27  information on the CI, including his/her criminal history, the Government will provide such
    information "ex parte and in camera."  (Govt.'s Opp. at 2, n. 1.)  This belated offer is
28  insufficient, as the Government should have submitted this information, under seal if
    necessary, in support of its opposition and in order to meet its evidentiary burden.

dog in the yard) was consistent with what anyone walking by on the sidewalk would observe. Notably, the CI did not provide any specific information regarding the residence not known to the public.  See e.g., United States v. Mayer, 560 F.3d 948, 957 (9th Cir. 2009) (finding anonymous informant reliable where the informant provided specific details about the residence not readily known to the public, i.e., a possible escape route).  Second, the information the CI provided with specificity (that T-Della Reese had guns and marijuana) was only corroborated after the search had taken place.  Lastly, the Government has provided no evidence that this CI was "tested," in that the CI had provided reliable information in the past. See e.g., United States v. Watts, 67 F.3d 790, 795 (9th Cir. 1995) (finding a confidential informant to be reliable whose tips had resulted in multiple convictions), overruled on other grounds, 519 U.S. 148 (1997).

Thus, under a "totality of the circumstances" analysis where the informant's veracity, reliability, and basis of knowledge are highly relevant, the Government has not established sufficient probable cause to believe that Defendant was residing at 98th Avenue relying on the CI's tip alone.

### 2.    Taken Together, the CI's Tip and the Police Investigation and Surveillance Are Not Sufficient to Establish Probable Cause

Separate from Defendant's attack on the evidence provided by the CI, Defendant argues that all of the evidence the Government has provided, taken together, cannot establish probable case that Defendant lived at the searched residence.  In support of that argument, Defendant cites United States v. Howard, 447 F.3d 1257 (9th Cir. 2006), which recognizes that there is a "relatively stringent standard in determining what constitutes probable cause that a residence belongs to a person on supervised release."  Id. at 1262.   In Howard, the Ninth Circuit found that the police did not have probable cause to believe that the defendant parolee lived at an unreported residence where: (1) visits to the parolee's reported address suggested that the parolee continued to reside there; (2) the police watched the address in question for a month and did not see the parolee there; (3) no credible witness had seen the parolee at the address in question for some time before the search (the only witness who claimed to have seen him was

1   not credible because his statement was contradicted by the staff at the apartment complex in

2   question); (4) the parolee did not have a key to the residence in question; and (5) neither the

3   parolee nor his purported co-resident admitted to his residence there.  Id. at 1268.

4        Also in Howard, the Ninth Circuit identified certain patterns that emerge in cases where

5   search of an address not reported by a parolee were upheld.  Howard, 447 F.3d at 1265.  Those

6   patterns include: (1) the parolee did not appear to be residing at any address other than the one

7   searched; (2) officers had directly observed something that gave them good reason to suspect

8   that the parolee was using his unreported address as his home base; (3) the parolee had a key to

9   the residence in question; (4) a co-resident or the parolee himself identified the residence in

10  question as that of the parolee.  Id. at 1265-66.  In describing those patterns, the Howard court

11  cited other Ninth Circuit cases, the facts of which are outlined below.

12       In Harper, the Ninth Circuit determined that there was "just barely" sufficient

13  information to give police probable cause to believe that a parolee resided at an unreported

14  address.  United States v. Harper, 928 F.2d 894, 896-97 (9th Cir. 1991).  There, the police had

15  information from an uncorroborated source that the parolee was living at the unreported

16  address, police had observed the parolee using his own key to enter the home, the home was

17  leased to the parolee's family with whom he had previously lived before incarceration, and

18  police saw cars belonging to known associates of the parolee parked at the home.  Id. at 896.

19       In Watts, the police were found to have probable cause to believe a probationer was

20  living at an unreported address.  There, the probation officer found the probationer at the

21  reported address only once over a series of multiple weekly visits.  Also, on the visit where the

22  probationer was at the address, the officer observed that the probationer's bedroom lacked

23  personal belongings that would indicate residency, and the probationer was seen knocking on

24  the door of his reported residence and leaving when nobody answered.  Watts, 67 F.3d at 795.

25  To establish that probationer was residing at the unreported address, a reliable informant, who

26  had provided information over a dozen times resulting in multiple convictions, had told officers

27  that the probationer was living with his girlfriend at the suspected address, specifics of the

28  informant's tip were verified by police (for example, that the probationer was driving a car

different than the one he had reported to his probation officer), and the probationer was seen entering the unreported house.  Id.

In Conway, the officers determined that the probationer was not living at his reported address because of twenty-one home visits, the probation officer had found him at home only once, and the only possessions of the probationer at the reported address were a pair of socks. United States v. Conway, 122 F.3d 841, 842-843 (9th Cir. 1997).  The officer had determined that the probationer was living at the suspected addressed based on a tip from a confidential informant that described the probationer, his street moniker, and the probationer's habit of walking his dog.  Id. at 843.  The tip was verified when the officer spoke with the probationer, who admitted that his dog was at the suspected address, and that a bedroom in the house was "his."  Id.  Also, the officer observed mail and notes addressed to the probationer, and the probationer opening the door to the address with his own keys.  Id.  The court found the suspicion of the officer that the probationer was living at the new address to be well-founded. Id.

More recently, in Mayer, the court determined that officers had probable cause to believe that probationer lived at the suspected address because he had previously lived at that address, his reported address was listed as "temporary," and neighbors of the suspected address had reported that probationer was living at and selling drugs from the residence; also, an anonymous phone call informed officers that the caller knew that probationer absconded from probation, that probationer had a gun, was growing marijuana, and knew of a possible escape route through the backyard.  Mayer, 560 F.3d at 957.  The anonymous tip provided details "not readily known to the public, and they were corroborated by [probationer's] previous residence . . ., his history of marijuana and firearms offenses, the fact that he had actually absconded from parole, and . . . subsequent observation of a possible escape route."  Id.

Next, the Court considers the patterns identified in Howard and the case law discussed therein in view of the facts of this case.

### a. The officers did not have sufficient evidence that Defendant was not residing at his reported address

In other cases where search of an address not reported by a probationer/parolee were upheld, police made direct efforts to establish whether that person was residing at the reported address, i.e., by finding probationer at the reported address only once over fourteen months of weekly visits and observing that his bedroom lack personal belongings (Watts), by finding probationer at the reported address only once after twenty-one attempts and observing one pair of socks as the probationer's only possessions (Conway), and, lastly, because the probationer reported his address as "temporary" (Mayer).

Here, Defendant asserts that Officer Bunn had information indicating that the 92nd Avenue address was Defendant's residence; specifically, Officer Bunn knew of the 2006 arrest report and October 2009 CORPUS and DMV print-outs that indicated a 92nd Avenue address for Defendant. Defendant contends that the police did not make a serious effort to determine whether he was living at his reported probation address on 92nd Avenue because they never attempted to contact him at that address, nor did they contact his probation officer for information about where he was living. Moreover, Defendant argues that the three "drive-bys" by Officer Bunn cannot establish that Defendant was no longer living at the 92nd Avenue address.

In response, the Government notes that Officer Bunn's investigation showed that Tiffany Doyle -- a woman that Defendant had lived with at his 92nd Avenue address -- now lived at the 98th Avenue address. Furthermore, the Government asserts that, based on Officer Bunn's "drive-bys," Defendant did not appear to be living at the 92nd Avenue address.

When compared to the direct attempts to locate probationers at their reported addresses from the above mentioned cases, the assumption that Defendant here was no longer residing at his reported address simply falls short. The three "drive-bys" by Officer Bunn were not sufficient to reveal whether Defendant was still living at the 92nd Avenue address. Additionally, the entrance to the 92nd Avenue residence is not visible from the street, making a "drive-bys" even more unlikely to result in observation of Defendant. Considering the level of

1  investigation in cases that found probable cause to believe that probationer was no longer at

2  their reported address, the instant case does not sufficiently establish probable cause to believe

3  that Defendant was not living at the 92nd Avenue address.

4              b.         **The officers' observations of the 98th Avenue home**

5                         **on December 23, 2009 are not sufficient to establish**

6                         **probable cause that Defendant resided there**

7          As indicated, Defendant disputes the Government's version of the events of December

8  23, 2009 in one respect.  Specifically, the Government contends that Defendant left the 98th

9  Avenue house on the morning of December 23, 2009, opened the door of the Cadillac parked

10  in the driveway, and sat in the car for a few minutes before returning to the house and entering

11  without knocking.  Defendant denies that he left the 98th Avenue residence on the morning of

12  December 23, 2009 before the police entered.  (Gates Decl., ¶ 3.)  Defendant does admit that he

13  opened the front door at around 9:30 a.m. on that day, and let in Natalia Kay Hughes.  (Id., ¶

14  3.)

15          Even taking the Government's versions of events as true, inferences that a probationer

16  was a resident of a particular home based on being an occasional overnight guest or being

17  observed at the residence minimally dressed have been ruled insufficient to establish probable

18  cause.  See Howard, 447 F.3d at 1265, 1268.  More is required.  For example, in United States

19  v. Dally, 606 F.2d 861 (9th Cir. 1979), the parolee was observed at the suspected new address

20  taking out the garbage, bringing in laundry, and talking with neighbors.  Id. at 862.  Therefore,

21  even if Defendant was observed exiting and entering the 98th Avenue residence in his pajamas,

22  there would remain insufficient support for probable cause.

23          Moreover, in Dally, Harper, and Conway, probationers were all seen entering the

24  suspected new residence with his own key.  Even under the Government's version of events,

25  Defendant did not use a key to reenter the 98th Avenue home.  However, Tiffany Doyle, who

26  arrived at the house after the search, admitted that Defendant stayed at the house and did

27  possess a key.

28

1    The information to be considered in assessing probable cause is the information officers

2  had available at the moment they began entry into the residence.  <u>Cuevas v. DeRoco</u>, 531 F.3d

3  726, 732 (9th Cir. 2008).  As such, since the Government does not contend that Defendant used

4  a key to reenter the home, and Defendant's possession of a key was not uncovered until after

5  the search, possession of a key is not factor that can be considered to establish probable cause.

6         **c.     Neither Defendant nor any co-resident identified the**

7                 **98th Avenue residence as Defendant's residence before**

8                 **the search**

9         There is no evidence in the record indicating that Defendant or a co-resident identified

10  Defendant as a resident to the 98th Avenue house <u>before</u> the warrantless search was conducted.

11  After the search, Defendant was advised of his rights, waived them, said that the marijuana and

12  guns were his, and that he stayed "most of the time" at the 98th Avenue residence.  Tiffany

13  Doyle, who arrived at the house after the search and denied that the marijuana and firearms

14  where hers, also admitted that Defendant stayed at the house.

15         As stated above, the information to be considered in assessing probable cause is the

16  information officers had available at the moment they began entry into the residence.  <u>Cuevas</u>,

17  531 F.3d at 732.  The officers did not have Defendant or a co-resident's admission that

18  Defendant stayed at the 98th Avenue address "most of the time" <u>before</u> they entered, so these

19  facts cannot be part of the consideration for probable cause.

20       **C.     The Government's Standing Argument**

21         After the close of briefing, the Government filed a "surreply" brief, asserting, for the

22  first time, that Defendant lacks standing to challenge the warrantless search.  The Government

23  also filed, at the same time as its surreply, a supplemental declaration from Officer Bunn,

describing further aspects of his investigation that lead officers to believe that Defendant was living at the searched address.[3]

The Government's position is that "there was probable cause for the officers to believe that Defendant was residing in the 98th Avenue address.  However, if this Court accepts Defendant's factual denials, the government submits that Defendant's motion must be dismissed for lack of standing."  (Govt.'s Surreply at 3.)  In other words, the Government argues that the Court cannot find both lack of probable cause to believe that Defendant was residing at the 98th Avenue address and, at the same time, find that Defendant has standing based on his "non-residential" presence in that home.  This argument is misguided because, to have standing to challenge a search based on violation of the Fourth Amendment, the defendant is not required to be a resident at the home.  Rather, all that is required is that the defendant had a "legitimate expectation of privacy" in the area searched.  United States v. Padilla, 508 U.S. 77, 82 (1993).

An overnight guest in another's home has a reasonable expectation of privacy for purposes of Fourth Amendment standing.  Minnesota v. Olson, 495 U.S. 91, 96, 98 (1990).  "To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectations of privacy that we all share.  Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society.... [W]e think that society recognizes that a houseguest has a legitimate expectation of privacy in his host's home."   Id. at 98-99; see also U.S. v. Gamez-Orduno, 235 F.3d 453, 458 (9th Cir. 2000) ("[w]hether or not he can show indices of residency (such as keys to the premises or the ability to come and go and admit or exclude others), an overnight guest in another's home has a reasonable expectation of privacy for purposes of Fourth Amendment

_____

[3] Defendant asks the Court to strike the supplemental Bunn declaration, on the ground that it does not go to the issue of standing, but rather to the substantive issue raised by Defendant's motion, i.e., whether the Government carried its burden of establishing that the police had probable cause, before they entered the residence, to believe that it was Defendant's residence.  This Court concludes that, even taking the facts in the supplemental Bunn declaration into account, a finding probable cause is not warranted.  Therefore, Defendant's objection to the declaration is DENIED as moot.

1  standing.").  Here, Defendant's position is that he was not a resident of the 98th Avenue home,

2  but was rather a houseguest.  As such, he has standing to challenge the search.[4]

3      **D.      An Evidentiary Hearing Is Not Necessary**

4          The Ninth Circuit requires that the district court conduct an evidentiary hearing in

5  connection with a motion to suppress where there are disputed factual issues going to the

6  merits of the motion.  United States v. Mejia, 69 F.3d 309, 318 (9th Cir. 1995).

7          As indicated, there are two factual disputes in this case: (1) whether Defendant exited

8  and entered the residence on the morning of the search, as the Government contends; and (2)

9  the factual discrepancies between Officer Bunn's declaration and the Government's discovery

10 letter disclosing the information provided by the CI.  However, even under the Government's

11 version of events, and taking Bunn's declaration as true, the Government has failed to show

12 that the officers had probable cause to believe that Defendant resided at the address that was

13 searched.  Because the above analysis relies on undisputed facts and/or the Government's

14 version of events, an evidentiary hearing is not necessary.

15 **IV.    CONCLUSION**

16         For the above stated reasons, IT IS HEREBY ORDERED THAT Defendant's Motion to

17 Suppress Evidence is GRANTED.  This order terminates Docket 23.

18         IT IS SO ORDERED.

19 Dated: September 8, 2010                    _____
20                                             SAUNDRA BROWN ARMSTRONG
                                                United States District Judge
21

22

23

24

25     [4] In addition, the Government's argument that the Court may only consider "the facts
26 set forth by Defendant" in determining standing is without merit.  As correctly noted by
   Defendant, a defendant may establish standing by pointing to all evidence in the record,
27 including the Government's evidence.  See U.S. v. Zermeno, 66 F.3d 1058, 1062 (9th Cir.
   1995) ("It was [defendant's] obligation to present evidence of his standing, or at least to point
28 to specific evidence in the record which the government presented and which established his
   standing.").